UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>PACCAR INC and PACCAR FINANCIAL CORP.,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("the Commission") alleges:

**SUMMARY OF THE ACTION**

1. This case concerns financial reporting, books and records, and internal controls violations by PACCAR Inc ("PACCAR" or the "Company"), a commercial truck manufacturer based in Bellevue, Washington, and its wholly-owned subsidiary, PACCAR Financial Corp. ("PFC").

2. The accounting deficiencies stem from three separate and distinct issues. First, from 2008 through the third quarter of 2012, PACCAR failed to report the operating results for its parts business as a reportable segment, as required by Generally Accepted Accounting Principles (GAAP). Because PACCAR failed to report its parts business as a separate segment, its financial reports did not contain certain information about its parts business separate and apart

from the truck business, and accordingly readers of its reports may not have been able to understand PACCAR's business as seen by the Company's executives.

3. Second, during 2009 PACCAR and PFC failed to maintain accurate books and records regarding their impaired loans and leases. As a result, PACCAR's and PFC's disclosures of impaired receivables and the specific reserves associated with these receivables in the notes to the financial statements filed with SEC Form 10-K filings were understated.

4. Third, PACCAR made overstatements in equal and offsetting amounts to loan and lease originations and collections for two foreign subsidiaries in its statement of cash flows for two quarters in 2009.

5. These errors were caused by deficiencies in PACCAR's internal accounting controls that included ineffective procedures regarding the proper application of accounting guidance to report aftermarket parts as a separate segment, the identification and evaluation of loans and leases for impairment, how to measure such loans and leases for impairment, and the calculation of loan and lease originations and collections at two foreign subsidiaries.

6. The Commission seeks an order enjoining PACCAR and PFC from future violations of the securities laws.

**JURISDICTION AND VENUE**

7. The Commission brings this action pursuant to Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)].

8. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because defendants PACCAR and PFC are headquartered in, and a substantial portion of the conduct alleged in this complaint occurred within, the Western District of Washington.

10. Assignment to the Seattle Division is appropriate pursuant to Local Rule 3(e)(1) because a substantial part of the events that gave rise to the claims alleged herein occurred in

King County. In addition, defendants PACCAR and PFC are headquartered in King County.

**DEFENDANTS**

11. PACCAR is a Delaware corporation headquartered in Bellevue, Washington. Its common stock is registered with the Commission under Section 12(b) of the Exchange Act [15 U.S.C. §78*l*] and is traded on the NASDAQ under the symbol "PCAR." PACCAR designs and manufacturers commercial trucks and traces its roots to the Seattle Car Manufacturing Company, formed in 1905.

12. PFC is a Washington corporation headquartered in Bellevue, Washington. Its notes are registered with the Commission under Section 12(b) of the Exchange Act. PFC provides financing and leasing of PACCAR manufactured trucks and other transportation equipment, and is a wholly-owned subsidiary of PACCAR.

**FACTUAL ALLEGATIONS**

**A. Background**

13. PACCAR is a Fortune 200 company that designs, manufactures, and distributes trucks and related aftermarket parts that are sold worldwide under the Kenworth, Peterbilt, and DAF nameplates.

14. From at least 2008 through the third quarter of 2012, PACCAR reported two segments in its SEC filings: Truck and Financial Services.

15. PACCAR's Truck segment included sales of both trucks and aftermarket parts, which were sold through PACCAR's independent dealer network. This segment comprised the majority of PACCAR's business, accounting for 93.7% of total 2011 revenues.

16. PACCAR's Financial Services segment provided loan and lease financing for PACCAR vehicles through wholly owned finance companies, which operated in 21 countries worldwide under the PACCAR Financial trade name.

17. PACCAR's portfolio of loan and lease receivables totaled approximately $6.5 billion in 2009. The largest of the PACCAR Financial entities, PFC, provided financing to U.S.-based customers and in 2009 had a total portfolio of over $3 billion.

18. As public companies, PACCAR's and PFC's financial statements filed with the Commission were required to be prepared in accordance with GAAP.

19. Beginning in May 2009, the Commission's Division of Corporation Finance issued a series of comment letters to PACCAR on a number of accounting and disclosure issues, including segment reporting, impaired loans, the allowance for loan and lease losses, and troubled debt restructurings. These comment letters and their associated responses, which continued into 2011, covered PACCAR's SEC filings from 2008 to 2010.

### B. PACCAR Failed to Report Its Parts Business as a Reportable Segment In Accordance with GAAP

20. In its Form 10-K for the period ended December 31, 2009, PACCAR's Truck segment reported nearly $7 billion in net sales and revenues, with income before income taxes of $25.9 million. Although PACCAR separately reported gross margins for its truck business and its parts business, PACCAR did not separately report income before income taxes from truck sales and aftermarket parts sales.

21. GAAP and Commission rules require an issuer to report specified information about reportable segments that meet certain criteria. A component of an enterprise is a reportable segment if it: (1) engages in business activities from which it may earn revenues and incur expenses; (2) has operating results that are regularly reviewed by the company's "chief operating decision maker" to make decisions about resources to be allocated to the segment and assess its performance; and (3) has discrete financial information available.

#### 1. PACCAR's Parts Business Was a Separate Reportable Segment

22. Since at least 2008, PACCAR's aftermarket parts operations met the segment reporting criteria and should have been reported as a separate segment. First, PACCAR conducted its parts business through PACCAR Parts, a separate division from PACCAR's truck divisions with a separate headquarters building and separate management team. PACCAR Parts maintained its own set of internal financial statements and reporting documents, which reflected that the Company's parts business earned revenues and incurred expenses.

SEC v. PACCAR, INC. ET AL.
COMPLAINT
-4-
SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA 94104
TELEPHONE: 415-705-2500

23. Second, PACCAR's "chief operating decision maker" ("CODM") regularly reviewed parts operating results to make resource-allocation decisions and assess performance. He reviewed parts operating results, including a profit contribution by region, on a monthly basis.

24. The CODM worked with PACCAR's board of directors and the Company's executive operating committee on allocating resources throughout the Company and its various divisions, including approving PACCAR Parts' annual capital budget and approving the establishment of PACCAR's parts distribution centers, some of which were independent of the Company's truck factories.

25. Finally, although PACCAR did not allocate many shared costs to its aftermarket parts operations, PACCAR maintained discrete financial information for its aftermarket parts activities such as internal parts financial statements, a parts profit contribution measure contained in a profit and loss statement, and other financial information.

### 2. PACCAR's Segment Reporting Structure Was Not Consistent with Management's View of Parts as a Separate Segment

26. The essence of the segment reporting requirements under GAAP is to enable investors to see an entity "through the eyes of management." However, in reporting its truck and parts results as a single segment, PACCAR did not provide investors with the same insight into the Company as PACCAR's executives.

27. PACCAR board materials during the relevant period reflect information for truck and parts separately (before allocation of shared costs) before arriving at a cumulative "truck" figure as reported in PACCAR's SEC filings. Other documents reflect that PACCAR viewed truck and parts profitability differently than as presented in the Company's public filings. For example, PACCAR's 2009 Form 10-K reported income before income tax for the Truck segment and all other of just over $68 million, broken out by $25.9 million for the Truck segment and $42 million for "all other." Internal documents, however, show that PACCAR senior executives also received information showing that, before the allocation of certain shared

SEC v. PACCAR, INC. ET AL.
COMPLAINT
-5-
SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA 94104
TELEPHONE: 415-705-2500

expenses, the truck and other businesses contributed a loss of $474 million, while the aftermarket parts business contributed profit of $542 million, resulting in the same income before income tax for Truck and other businesses of $68 million as reported in the 2009 Form 10-K.

28. Internal PACCAR documents further show that company executives and officers viewed parts as a distinct business. Board materials contained slides titled "Earnings by Segment" to separately report truck, parts, and financial services results. PACCAR's strategic planning documents that include forecasts and upcoming initiatives were broken out into separate slides for three distinct businesses: truck, parts, and financial services.

29. Although PACCAR disclosed net sales and revenues and gross margin for aftermarket parts beginning in 2009, it did not classify aftermarket parts as a separate segment and did not report all the information for a separate segment. By at least 2008, PACCAR should have begun reporting aftermarket parts as a separate segment but did not do so. As a result of PACCAR's actions, PACCAR's Forms 10-K for fiscal years 2008, 2009, 2010, and 2011, and Forms 10-Q over the same period and the first three quarters of 2012 failed to provide complete segment information required by GAAP and Commission rules.

**C. PACCAR and PFC Understated Impaired Receivables and the Associated Specific Reserve In the Notes To the Financial Statements In Their 2009 10-K Filings**

30. In 2009, PACCAR Financial entities worldwide held approximately $6.5 billion in loan and lease receivables, with $3 billion held at PFC.

31. GAAP required PACCAR to identify its impaired loans, and to measure and disclose in its SEC filings the amount of impairment associated with such loans. A loan is impaired under GAAP where it is "probable" that the creditor will be unable to collect all amounts due in accordance with the contractual terms. If a loan is impaired, the creditor must determine the amount of impairment and record the amount as an "allowance for credit losses." For specifically-identified loans, PACCAR was to measure and disclose in the notes to the financial statements filed with the SEC an amount known as a "specific reserve" under GAAP-prescribed methods.

SEC V. PACCAR, INC. ET AL.
COMPLAINT
-6-
SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA 94104
TELEPHONE: 415-705-2500

32. In 2009, PACCAR and PFC chose to disclose both impaired loans and impaired leases in their annual filings with the SEC. These disclosures were required to be complete and not misleading.

33. PACCAR reported in Note E to the financial statements filed with its Form 10-K for the year ended December 31, 2009 $67.4 million of impaired receivables, with an associated specific loss reserve of $7.3 million. In its own 2009 10-K for the same period, PFC disclosed impaired receivables of $46.6 million, with a specific loss reserve of $19.6 million.

34. These amounts were understated. While PACCAR and PFC maintained reserves for all of their receivables, in at least two distinct areas PACCAR and its financial services entities failed to identify certain receivables as impaired and failed to report a specific reserve associated with such receivables in its disclosures in SEC filings.

### 1. Non-accruals and Troubled Debt Restructurings

35. PACCAR acknowledged in SEC comment letter responses that it had failed to identify certain non-accrual receivables as impaired and to account for some modified loans as impaired in its 2009 Form 10-K.

36. First, PACCAR failed to disclose that all of its non-accrual receivables as of year end 2009 were impaired. In Note E to the financial statements filed with its 2009 10-K, PACCAR reported impaired finance receivables of $67.4 million and finance receivables on non-accrual status of $88.4 million. Under GAAP and PACCAR's own stated policy, non-accrual receivables were considered impaired.

37. PACCAR's disclosure of $67.4 million in impaired receivables in Note E did not reflect all finance receivables on non-accrual status, a 24 percent understatement. PACCAR admitted in its July 2010 comment letter response to the SEC that all non-accrual finance receivables should have been reported as impaired.

38. Second, PACCAR failed to include all troubled debt restructurings, or "TDRs," in its impaired receivables disclosure. At the relevant time, a troubled debt restructuring was a modification to an existing loan in which a creditor grants a concession to a borrower

SEC V. PACCAR, INC. ET AL.
COMPLAINT
-7-
SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CA 94104
TELEPHONE: 415-705-2500

experiencing financial difficulty in an effort to improve collection or reduce losses on distressed loans. Under GAAP, TDRs were considered impaired and PACCAR should have included all TDRs in the impaired receivables disclosure.

39. PACCAR failed to evaluate modifications to certain loans for TDR treatment until 2010, and thus PACCAR did not include all TDRs in its impaired receivables disclosure in the 2009 Form 10-K. PACCAR stated in its July 2010 comment letter response to the SEC that all performing TDRs should have been included in the disclosure.

40. An additional $42.5 million should have been added to PACCAR's 2009 impaired receivables disclosure due to non-accrual and TDR receivables, resulting in a 39 percent understatement of impaired receivables. In addition, PACCAR should have reported specific loss reserves on impaired receivables of $20.9 million, instead of the $7.3 million PACCAR originally reported.

### 2. PFC's Large, Past Due Accounts

41. PFC failed to disclose the impairment of leases to its two largest past due customers. At year end 2009, the two accounts held outstanding balances of $57.7 million and $24.7 million, respectively, and had been in and out of past due status as early as 2008.

42. PFC executives were sufficiently concerned about both customers that the accounts were segregated in PFC's loss reserve analysis for accounting treatment beginning in the first quarter of 2009 – the only two accounts so segregated in the analysis for the entire year. Both accounts were also included in the "At-Risk Major Accounts" section of PACCAR's internal reporting document.

43. PACCAR and PFC senior executives had extensive internal communications in the summer of 2009 regarding the accounts, and discussed PFC's potential loss exposure under various scenarios, including repossession.

44. Neither customer was included as an impaired receivable in PACCAR's nor PFC's 2009 impaired receivables disclosure. Had PFC properly identified these accounts as impaired in accordance with its policies, PFC would have reported in Note B to the financial

statements filed with its 2009 Form 10-K an additional $82.4 million in its impaired receivables disclosure, a 64 percent understatement than what was actually reported. PFC should have also reported in Note B an additional $11.7 million in specific reserves on impaired receivables. PACCAR's impaired receivables and specific reserve disclosure in Note E to the financial statements filed with its 2009 Form 10-K were also understated by 55 percent and 62 percent, respectively, due to the omissions of these accounts.

45. As a result of all of the understatements described above, PACCAR and PFC failed to provide complete information about their respective loan and lease portfolios.

**D. PACCAR Overstated Equal and Offsetting Amounts In Two Lines Within Its Statement of Cash Flows In the Second and Third Quarters of 2009**

46. PACCAR overstated the amounts of "Retail loans and direct financing leases originated" and "Collections on retail loans and direct financing leases" as reported in the consolidated Statements of Cash Flows for the quarters ended June 30, 2009 and September 30, 2009.

47. While the amounts in each of the two lines were equal and offsetting, resulting in no change in the "net cash provided by investing activities" reported in the 2009 Form 10-Q filings, each of the amounts was misstated. The amounts for each of the two lines in the Form 10-Q for the six months ended June 30, 2009 were overstated by $246.4 million, resulting in a 52 percent overstatement in loan and lease originations and a 23 percent overstatement in collections. In the Form 10-Q for the nine months ended September 30, 2009, the same lines were overstated by $802.1 million, resulting in overstatements of 99 percent and 49 percent, respectively.

48. PACCAR identified these errors during the first quarter of 2010. PACCAR acknowledged these errors in comment letter responses to the SEC, attributing the errors to changes in accounting systems at two foreign subsidiaries, and reported corrected figures in its second and third quarter filings in 2010.

### E. The Accounting Errors Were Caused By Deficient Internal Controls

49. Each of the misstatements identified above can be traced to deficiencies in PACCAR's internal accounting controls.

50. PACCAR lacked sufficient controls to adequately monitor its compliance with the segment reporting requirements under GAAP. Although PACCAR maintained a segment reporting policy, it did not document its review of the criteria and its compliance with GAAP as it related to its aftermarket parts activities, and did not properly apply accounting guidance to report aftermarket parts as a separate segment.

51. PACCAR lacked sufficient written policies and procedures to describe the primary elements of its loan loss methodology. Specifically, the company lacked sufficient written policies and procedures relating to portfolio segmentation, identification of impaired loans and leases, and impairment measurement, as well as policies and procedures describing the review and approval process of the amount of allowance included in the company's financial statements.

52. These failures were further revealed in statements made in PACCAR's comment letter responses to the SEC's Division of Corporation Finance. PACCAR assured the Division that it was following GAAP-prescribed methods for evaluating impairment. In response to multiple comment letter questions, PACCAR incorrectly stated that it used the fair value of the associated collateral less costs to sell as the sole basis of measuring impairment on individually evaluated receivables in its 2009 Form 10-K. These statements were incorrect in that PACCAR calculated a specific reserve for certain individually identified receivables using a pooled, aggregated analysis.

53. PACCAR lacked sufficient written policies and procedures for identifying and measuring impairments on modified or restructured loans. Although PACCAR's year-end checklists included TDR guidance, PACCAR did not begin to analyze modified loans for TDR

treatment until mid-2010. PACCAR thus failed to follow its policies prior to that time for identifying TDRs.

54. Finally, PACCAR lacked adequate procedures to prevent or detect significant quantitative errors in its periodic cash flow reporting. While the errors in PACCAR's cash flow reporting may have been due to a change in the Company's journal entry process, these errors should have been detected in the review of PACCAR's Form 10-Qs for the second and third quarters of 2009. Had proper procedures been in place, the Company would or should have detected that the originations and collections were significantly overstated in the two Form 10-Qs.

**F. PACCAR Has Implemented Remedial Measures to Improve Compliance with GAAP**

55. As a result of the SEC comment letter process, the SEC's investigation, and PACCAR's own procedures, PACCAR implemented a number of remedial measures to enhance its internal accounting controls and improve its compliance with GAAP.

56. First, PACCAR revised its management reporting and began to report its aftermarket parts business as a separate segment beginning with its Form 10-K for the year ended December 31, 2012, which was filed on February 27, 2013.

57. Second, as set forth above, PACCAR identified the understatement in impaired receivables and specific loss reserves due to non-accrual receivables and TDRs in response to SEC comment letters. PACCAR has implemented measures to address the deficiencies regarding impaired receivables and specific loss reserves, including updating its written policies and procedures for identifying impaired receivables.

58. Third, PACCAR identified the overstatement in the amounts of "Retail loans and direct financing leases originated" and "Collections on retail loans and direct financing leases" reported in the consolidated Statements of Cash Flows for the quarters ended June 30, 2009 and September 30, 2009 through its own procedures. PACCAR disclosed the overstatements in

SEC V. PACCAR, INC. ET AL.
COMPLAINT                                              -11-                SECURITIES AND EXCHANGE COMMISSION
                                                                           44 MONTGOMERY STREET, SUITE 2800
                                                                           SAN FRANCISCO, CA 94104
                                                                           TELEPHONE: 415-705-2500

response to SEC comment letters and reported corrected figures in its SEC filings for second and third quarters of 2010. PACCAR has implemented measures to address the alleged deficiencies in its reporting of loan and lease originations and collections, including instituting new procedures and terminating the employee who was responsible for the errors in the statements of cash flows.

59. Fourth, PACCAR has taken steps to improve its accounting controls generally by enhancing its external reporting group within its corporate accounting function by hiring additional employees, and improving transparency by expanding the MD&A and footnote disclosures in its annual report and Form 10-K and Form 10-Q filings with the SEC.

## FIRST CLAIM FOR RELIEF

*Violations of Section 13(a) of the Exchange Act and
Rules 12b-20, 13a-1, and 13a-13 thereunder*

60. The Commission realleges and incorporates by reference Paragraphs 1 through 59.

61. PACCAR has violated, and unless restrained and enjoined, will continue to violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13] thereunder, which obligate issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to file with the Commission accurate periodic reports, including annual and quarterly reports.

## SECOND CLAIM FOR RELIEF

*Violations of Section 13(b)(2)(A) of the Exchange Act*

62. The Commission realleges and incorporates by reference Paragraphs 1 through 61.

63. PACCAR and PFC failed to make and keep books, records, or accounts which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of its assets, in violation of Section 13(b)(2)(A) of the Exchange Act.

64. PACCAR and PFC violated and, unless restrained and enjoined, will continue to violate Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

### THIRD CLAIM FOR RELIEF

*Violations of Section 13(b)(2)(B) of the Exchange Act*

65. The Commission realleges and incorporates by reference Paragraphs 1 through 64.

66. PACCAR and PFC violated Section 13(b)(2)(B) of the Exchange Act, which obligates issuers of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to devise and maintain a sufficient system of internal accounting controls.

67. PACCAR and PFC violated and, unless restrained and enjoined, will continue to violate Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

I.

Issue an order permanently enjoining PACCAR from violating Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13] thereunder, and permanently enjoining PFC from violating Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

II.

Order PACCAR to pay a civil penalty pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

III.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders

and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

IV.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: June 3, 2013                                  Respectfully submitted,


                                                     /s/ Jason M. Habermeyer
                                                     _____
                                                     Jason M. Habermeyer

                                                     MICHAEL S. DICKE
                                                        DickeM@sec.gov
                                                     CARY S. ROBNETT
                                                        RobnettC@sec.gov
                                                     JASON M. HABERMEYER
                                                        (Conditionally Admitted Pursuant to
                                                        LCR 83.1(c)(2))
                                                        HabermeyerJ@sec.gov

                                                     Attorneys for Plaintiff
                                                     SECURITIES AND EXCHANGE
                                                     COMMISSION
                                                     44 Montgomery Street, Suite 2800
                                                     San Francisco, California 94104
                                                     Telephone: (415) 705-2500
                                                     Facsimile: (415) 705-2501